### RICHARD C. CABOT *versus* JOSEPH C. GIVEN.

In a suit by an *indorsee* against the *maker* of a promissory note, payable to an insurance company, and indorsed and transferred for the company by the president, parol evidence that he was acting president, at the time of the indorsement, is admissible and sufficient, without producing the records of the company.

And, in such suit, between other parties, proof of the handwriting of such president is sufficient evidence of the indorsement and transfer of the note to the plaintiff, without evidence that he had special authority for that purpose.

ASSUMPSIT by an indorsee against the maker of a promissory note, of the following tenor: —

" $601.                              Boston, Nov. 8th, 1855.

" For value received, I promise to pay to the Commercial Mutual Marine Insurance Company, or order, six hundred and one dollars, in fourteen months from Nov. 3d, 1855. Payable in Bath, Me.                         Joseph C. Given."

The note was subsequently, and before its maturity, indorsed and transferred to the plaintiff, in payment of a claim which he had against the company. The indorsement was as follows: —" Com. M. M. Ins. Co., by Geo. H. Folger, Pres't."

The case was opened for trial before DAVIS, J., at the April term, 1858. The defendant pleaded the general issue, with a brief statement that the note was given for a policy of insurance; that the plaintiff knew that fact when he purchased the

note; and that a loss happened by which the company became liable to pay the policy. An account in set-off for the loss was duly filed by the defendant.

The sufficiency of the indorsement, and the authority of Folger to make it being denied, the plaintiff called Charles H. Tyler, who testified that he was formerly paying teller of the Grocers' Bank, Boston, where the Commercial Mutual Marine Insurance Company did their business to a large amount. He further testified (the defendant objecting, and being overruled,) that George H. Folger was acting as president of said insurance company in 1855, and acted as such for three years previous to 1856. He had known him to draw checks and sign notes. The indorsement on the note in suit is in his handwriting. He acted as president through the year 1855.

On cross-examination, he testified that he, (witness,) was not one of the directors of the insurance company. He had never attended a directors' meeting; had seen Folger preside at a stockholders' meeting; never saw a copy of the by-laws of the insurance company; was connected with the Grocers' Bank when it failed, Nov. 30, 1855; had done business with Folger three years previous to the stopping of the bank, and between December, 1855, and May, 1856, when the insurance office stopped.

Here, the plaintiff was permitted (defendant objecting) to read the note to the jury; and he rested his case.

The defendant introduced the letters of the plaintiff to the defendant, dated Jan. 10, 1857, and Feb. 5, 1857, and also the by-laws of said insurance company.

"Boston, Jan. 10, 1857.

"Mr. Joseph C. Given, Brunswick, Maine,

"Sir:—I hold your note for $601, 'payable at Bath,' 3—6 January, and protested for non-payment. This note I received in December, 1855, for a debt due to me by the insurance office, discounting interest only. I was then informed that you were able to pay your note and would do so.

"I have, therefore, to request you to pay the same without

delay, as it is an inconvenience and loss to me not to receive the money now.

" It is easy to prove what I state, and it is well settled that no off-set can be made by any claim that you may have against the office, to whom you gave the note at first, as it was negotiable, and all mutual offices have sold their stock notes, when necessary, as they form their capital. The principle is quite clear and settled in law and equity.

" I remain as ever,

" Richard C. Cabot, No. 34 Doane St."

" Boston, Feb. 5, 1857.

" J. C. Given, Esq.,

" Dear Sir : — I have received yours of 29th ult., and now, in compliance, send you an exact copy of your note, without any addition or omission, except the memo. of the notary of protest, in red ink, and which, of course, was not on the note when you signed it.

" I can easily prove that I took this note of the company through Mr. Athearn, one of the directors, in December, 1855, in part payment for money which the company owed me, discounting interest six per cent. I paid for the note as cash. Mr. Athearn, at the time, assured me that it was a very good note, which would certainly be paid, and offered to guarantee it for five per cent. I then inquired of a professional man, and was informed that you could make no off-set to the note, under the circumstances, in case you had any claim on the company, or should have at any time afterwards, and this is undoubtedly the fact. I was not compelled to take your note, as I then could have had other notes, or other property or money. I regret that you should suffer any loss; I know from experience how disagreeable it is, but it is in no way my fault; I have been defrauded by directors of corporations out of ten times this amount. I am obliged to " grin and bear it." I find that all persons who have demands on me, make me pay to the utmost that law or justice will allow, and, as I do not wish to reside in an alms-house the remainder of my days,

Cabot *v.* Given.

in order to prevent this, I must collect what is due to me as far as possible. If you have any acquaintance here to whom you wish me to go and verify what I write to you, I will do so willingly. I remain yours, &c.,

"Richard C. Cabot."

The defendant offered to put in the policy of insurance, and to prove that the note declared on was given for said policy, that a loss happened under said policy, as set forth under his brief statement, and that the plaintiff knew, when he took the said note, that it was given for the policy of insurance aforesaid.

The Court offered to admit any testimony on the part of the defendant, to prove that the note did not come into the hands of the plaintiff before its maturity, or in due course of business, or for a valid consideration. But, without such evidence, other than what had already been introduced, the Court excluded the testimony offered by the defendant, holding that, under the circumstances of the case, the plaintiff could not be affected by any thing contained in the policy; and that the defendant could not off-set his claim against the insurance company in this action. The Judge also ruled, as matter of law, upon the facts proved, that the indorsement of the note was a valid and sufficient indorsement.

The case was then withdrawn from the jury, to be submitted to the full Court.

If the action was maintainable upon the foregoing testimony, and the foregoing admissions and exclusions of testimony were correct, the defendant was to be defaulted; otherwise the action was to stand for trial.

*S. & D. W. Fessenden,* for plaintiff, contended —

1. That the evidence of Tyler to prove that Folger was president of the company was admissible. *Bank of U. S.* v. *Dandridge,* 12 Wheat. 64; *Stage Company* v. *Longley,* 14 Maine, 448; *Warren* v. *Ocean Ins. Co.* 16 Maine, 439; 2 Greenl. Ev. § 62.

2. Folger being president of the company, and, by the by-

laws, treasurer *ex officio*, it was within the scope of his authority to indorse the note. Angell & Ames on Cor. § § 284, 299, *et seq.*; *Bank* v. *Warren*, 7 Hill. 91; *Fleckner* v. *Bank of U. S.* 8 Wheat. 338; *Howland* v. *Myer*, 3 Comst. 290; *Aspinwall* v. *Myer*, 2 Sandf. 180; *Bank* v. *Atlantic Silk Co.* 3 Met. 282.

3. The note was negotiable, and indorsed to plaintiff before maturity. He is not subject to the equities between the original parties. 1 Parsons, 209; *Adams* v. *Smith*, 35 Maine, 324; Edwards on Bills and Notes, 145; *Sweetser* v. *French*, 2 Cush. 310.

*Barrows* argued for the defendant—

1. There is no legal evidence that Folger was president of the company. The records of the company were the best evidence on that subject; and, unless some reason was shown why the records could not be produced, parol proof should not have been admitted. 1 Greenl. Ev. § § 87, 88; 2 Greenl. Ev. § § 60 – 64; Starkie's Ev. 102; *Bank* v. *Atlantic Silk Co.* 3 Met. 282.

2. But, if it was sufficiently proved that Folger was president of the company at the time the note was indorsed, it does not follow that he had any authority to make such indorsement. Special authority for that purpose should have been proved. No such authority was shown. The idea that the president had such authority, unless specially conferred by the directors, is expressly negatived by the sixteenth section of the by-laws, — "no promissory note or obligation shall be given without the previous vote of the committee of finance."

3. The plaintiff himself offered no evidence that the note was transferred to him in good faith, in the usual course of business, and for a valuable consideration. He ought, therefore, to have been nonsuited. Bayley on Bills, 492; *Rees* v. *Marquis of Headfort*, 2 Campb. N. P. C. 574; *Heath* v. *Sansom*, 2 B. & A. 291; *Aldrich* v. *Warren*, 16 Maine, 466; *Monroe* v. *Cooper*, 5 Pick. 412.

4. We offered to prove that the plaintiff knew that the note was given for a policy of insurance. He knew, therefore, of the equities between the original parties, and took the note subject to these equities as much as if the note had been overdue. Bayley on Bills, 544; 1 Parsons on Con. 215; *Knapp* v. *Lee*, 3 Pick. 452; *Thompson* v. *Hale*, 6 Pick. 261.

5. But the plaintiff advanced nothing for the note. He merely discharged a demand which he previously held against the company. It was not such a consideration as precludes the maker from availing himself of his claim in set-off against the company. The plaintiff and the defendant each held a policy of insurance from the company, and the equity of neither was superior to that of the other. *Howes* v. *Smith*, 16 Maine, 180; *Rosa* v. *Brotherson*, 10 Wend. 85; *Evans* v. *Smith*, 4 Binn. 367; *Bay* v. *Coddington*, 5 Ch. R. 54; *Coddington* v. *Bay*, 20 Johns. 637.

The opinion of the Court was drawn up by

DAVIS, J. — On the eighth day of November, 1855, the defendant procured a policy of insurance from the Commercial Mutual Marine Insurance Company, for the sum of $8000, on the ship Marcia Greenleaf, giving therefor his negotiable promissory note for $601, payable in fourteen months. In December following, the plaintiff, having a claim against the company, received the defendant's note therefor, in part payment, indorsed as follows:—" Com. M. M. Ins. Co., by George H. Folger, President." The case shows that the plaintiff took the note in good faith, long before its maturity, and for a valuable consideration. *Adams* v. *Smith*, 35 Maine, 324.

The defendant afterwards met with a loss within the terms of his policy of insurance, and, the company having become insolvent, it has not been paid. He thereupon declined to pay the note to the plaintiff; and he has filed his account for the loss in set-off in this action. But it is obvious that, if the note was legally transferred to the plaintiff, this account in set-off cannot be allowed. The defendant took upon himself

the risk of the solvency of the insurance company; and, if he chose to give a negotiable promissory note for the policy, he cannot complain of any *bona fide* holder for requiring him to pay it. The only question, therefore, is as to the validity of the transfer of the note to the plaintiff.

It is said that the case does not show that Folger was president of the company, because it was not proved by the record of his appointment. There are some cases, in which a corporation is a party, involving the authority of the officers, in which their authority must be proved by the record. But the cases are numerous in which their authority has been proved by parol evidence. In this case, the action is between other parties, neither of whom has the custody of the records, and before a Court in another State, so that there is no compulsory process by which they can be produced. It is proved that Folger was the acting president, prior and subsequent to the time when the note was transferred. He signed the policy of insurance, as president, for which the note was given, only one month before it was transferred; and no annual meeting could have intervened for the choice of any one in his place. We think the evidence is sufficient that he was authorized to act as president at the time.

But it is said that, if he was president of the company, and so, according to the customary mode of transacting such business, authorized to transfer the note, the presumption that he was so authorized is disproved by the by-laws, which are a part of the case. And it is true that no specific authority to indorse notes is given by the code of by-laws to the president, or to any other officer of the company. But it does not follow that such authority is not necessarily implied in powers which are granted.

And it should be remembered that this is not an action against the company as indorsers, upon the contract of indorsement. It is not a case embraced in the terms of § 16 of the by-laws. It is a suit between *other parties*, involving only the authority of the president *to sell the note in payment of a demand against the company.* And, in addition to the presump-

tion arising from the usual course of such transactions, the president is made, by the by-laws, *ex officio* treasurer; and so he had the legal custody of the assets. He was also authorized to represent the company as stockholders in banks and other corporations; to receive all moneys coming due, and give good and sufficient discharges for the same; to adjust and pay all losses, &c. He transferred the note in suit, before any loss had happened to the defendant, and in payment of a loss that the plaintiff had suffered. And we are satisfied that the transfer was valid and sufficient to pass the title. The rulings of the presiding Judge were correct, — whether as matters of law or of fact being immaterial, as the case did not go to a jury. According to the agreement of the parties, the defendant must be defaulted.

TENNEY, C. J., HATHAWAY, MAY, and GOODENOW, J. J., concurred.