## STATE *v.* ROBERTS.

In an indictment founded upon Gen. Stats., ch. 259, sec. 8, which provides for the punishment of any person who shall " wilfully obstruct or assault any officer or person, duly authorized, in the discharge of any duty of his office," it is sufficient to designate the party assaulted as " then and there being a collector of taxes of said town," without alleging that he was duly authorized to serve the warrant, in the service of which he was obstructed.

It is unnecessary to set out, *in hœc verba,* the process under which an officer is acting; but it is sufficient so to describe it as to identify it, and inform the respondent of what he is called on to answer.

Proof that an individual has acted notoriously as a public officer is *prima facie* evidence of his official character, without producing his commission or the record of his appointment.

Gen. Stats., ch. 54, sec. 8, provide that a collector of taxes, for want of goods and chattels whereon to make distress, may take the body of any person neglecting or refusing to pay the tax assessed against him. Under the proper construction of this law, the collector is not required to search for property, nor to incur labor, expense, or risk in taking it. He is only required to take such property as shall be specifically produced and tendered to him, together with indemnity, if required.

It is no defence to an indictment for obstructing a tax-collector in the service of his warrant, that the proceedings upon which the assessment of the tax was founded were irregular, and the tax, in fact, illegal, nor that the warrant may have been defective in point of law. If the warrant be not deficient in the general form of it, and have issued in the ordinary manner from the selectmen, the collector is required, by law, at his own peril, to pay obedience to the process, and will be protected therein.

INDICTMENT, charging that the defendant, Moses Roberts, on January 9, 1872, " with force and arms upon one Warren W. Holmes, then and there being collector of taxes for said town of Jefferson, and in the due discharge of the duties of his said office, to wit, in the service of a certain

warrant for the collection of taxes theretofore issued and directed to said Holmes by the selectmen of said town of Jefferson, then and there did make an assault, and him, the said Holmes, so being in the due discharge of the duties of his said office, then and there did wilfully obstruct, oppose, and hinder, and then and there did beat, bruise, wound, and ill-treat, and other wrongs, &c., contrary to the form of the statute," &c.

To show that said Holmes had legal authority to arrest the defendant for non-payment of his tax, the State was permitted to prove by said Holmes that he acted as collector of the taxes for the year ; and the court ruled that it was sufficient, *prima facie*, to show that he was an officer *de facto*, without producing the record of his appointment or election ; and the defendant excepted. To show that Holmes was not duly qualified as collector, the respondent offered the record of his appointment by the selectmen, dated April 29, 1871, and objected that there was no evidence that Holmes had taken the oath of office ; and all that appeared of record or otherwise was this, at the bottom of the appointment, viz. : " Personally appeared W. W. Holmes, and swore to the above affidavit.          C. L. PLAISTED, Justice of the Peace."

The court overruled the objection, and the defendant excepted.

It appeared that, long before said January 9, said Holmes had given the defendant due notice of his tax, and he refused to pay. On said January 9 said Holmes, having a tax-list and warrant for the year 1871, all in due form, went to the defendant's house and demanded of him his unpaid tax, amounting to $46.59, which the defendant declined to pay. They were standing, at the time, in the highway near the defendant's barnyard, in which were some twenty head of cattle, consisting of oxen, cows, and young stock. As to what then occurred, the defendant testified as follows :

" He [Holmes] said,—' Have you got any property ? ' Says I, ' Yes, sir.' Says he, ' Where is it ? ' I said, ' Right there in the yard—go and take just what you like of it.' We went along towards the stable. He said, ' Will you turn it out into the road ? ' I told him, ' No ; I have turned it out all I can :—there are oxen, cows, steers, &c.—take what you will.' He said, ' Unless you turn it out I shall have to arrest your body ; ' " and directly afterwards Holmes touched him on the shoulder, and said that he arrested him. The evidence for the State, as well as the testimony of the respondent himself, tended strongly to show that he afterwards obstructed and prevented said Holmes from completing the arrest and carrying him away to jail. The court ruled that, upon the testimony of the defendant, he was not justified in resisting or obstructing said Holmes in making the arrest ; and the defendant excepted.

The court then inquired of counsel for the defendant if there was any question upon which they desired to go to the jury, and they replied that there was not. Thereupon a verdict of guilty was entered, by general consent, for the purpose of having the questions of law thus raised settled by the whole court.

The defendant moved in arrest of judgment; and the questions thereon arising were reserved.

*Fletcher & Heywood*, for the respondent.

1. We contend that the collector of taxes had no right to arrest the respondent after he was offered sufficient personal property upon which to make his levy and to satisfy the taxes. The respondent did offer such property, and there was no doubt as to the title of it. If the title had been in doubt, the collector might have required an indemnity; but this he did not do. The law which prescribes the duties of collectors, in their proceedings to collect taxes—Gen. Stats., ch. 54, sec. 8—evidently implies that the body shall not be arrested if the tax-payer has sufficient goods on which to make distress.

Undoubtedly the law should favor collectors, and protect them, as far as is reasonable, in the discharge of their duties. But to take this case as an example: The respondent had twenty-one cattle within the collector's reach, and he requested the collector to select and take such of them as he pleased, and satisfy the tax. The court decided that the respondent should have selected and turned out one or more of the creatures, sufficient to pay the tax. We contend that it was more favorable to the collector to let him select such of the cattle as he chose, and as he could most conveniently drive away. To save the body from arrest, it is necessary, as has been decided, that the tax-payer should expose goods and chattels sufficient upon which to levy the tax; but it has not been held that, where sufficient property has been exposed, the particular property must be turned out. *Kinsley* v. *Hall*, 9 N. H. 190.

2. The collector had no right to exercise the duties of that office, because he did not take the oath of office and have it recorded, with his appointment, in accordance with Gen. Stats., ch. 39, sec. 6.

3. The indictment is insufficient. It is intended to be drawn under the provisions of Gen. Stats., ch. 259, sec. 8; and, as pointed out in the motion in arrest, the indictment does not allege that the collector was " duly authorized," and in the discharge of his duty.

That this must be alleged, substantially in the words of the statute, is decided in *State* v. *Beasom*, 40 N. H. 367.

*Ray*, solicitor, and *Drew*, for the State.

1. It is sufficient, in this cause, to show that Holmes was collector *de facto*. 1 Greenl. Ev., secs. 83 and 92; 2 Bish. Crim. Procedure, secs. 783 and 828.

2. We contend that under our laws a collector of taxes, after a demand of the tax, is not bound to levy upon the delinquent's property at all, but, like a sheriff in serving a writ, may, in case of non-payment, at once take the body and hold it till the tax is paid. *Kinsley* v. *Hall*, 9 N. H. 190; *Osgood* v. *Welch*, 19 N. H. 105.

3. At all events, under the circumstances of this cause, as disclosed by the testimony, the collector was clearly authorized to make the arrest. There was no such tender of specific articles as would exempt the respondent's body from arrest. His cattle were all in the barnyard. The collector requested him to turn out some of them into the road, in order that he might levy thereon and satisfy the tax and costs. Roberts refused to do this, and required the collector to go into his barnyard and select for himself. This he was not bound to do; and hence the arrest was lawful in any event. See authorities before cited.

4. This indictment, drawn by the late attorney-general, gives a sufficient description of the warrant. On trial, a lawful warrant was put in evidence; otherwise, no conviction could have been obtained. It seems to us that, after verdict, a due and lawful warrant will be implied from the allegations of the indictment. We rely upon the reasons suggested in our brief in *State* v. *Cassady*, 52 N. H. 500, on this point. See, also, *Slicker* v. *The State*, 13 Ark. 397 ; *McQuoid* v. *The People*, 3 Gill. (Ill.) 76, cited in note 2 of sec. 835, Bish. Crim. Procedure, vol. 2.

Foster, J. The first exception of the defendant is to the ruling of the court that it was sufficient, *prima facie*, to show that Holmes was an officer *de facto*, without producing the record of his appointment or election.

But it is said by Prof. Greenleaf—1 Greenl. Ev., sec. 83—that "proof that an individual has acted notoriously as a public officer, is, *prima facie*, evidence of his official character, without producing his commission or appointment." And again,—"It is not, in general, necessary to prove the written appointments of public officers. All who are proved to have acted as such are presumed to have been duly appointed to the office, until the contrary appears ; and it is not material how the question arises, whether in a civil or criminal case, nor whether the officer is or is not a party to the record." Sec. 92. This proposition is endorsed and approved by Bishop, in his work on Criminal Procedure, vol. 2, sec. 783 ;—see, also, sec. 828.

The reason of the doctrine is said to be founded mainly in public convenience.

The rule is of long standing. In *Berryman* v. *Wise*, 4 Term 366 (A. D. 1791), Buller, J., said that, "in the case of all peace officers, justices of the peace, constables, &c., it was sufficient to prove that they acted in those characters, without producing their appointments, and that, even, in the case of murder.

"In actions brought by attorneys for their fees, the proof now insisted on has never been required. Neither in actions for tithes is it necessary for the incumbent to prove presentation, institution, and induction : proof that he received the tithes and acted as the incumbent is sufficient."

And the rule is firmly settled and established, beyond all question, by the highest tribunals in this country. *Ronkendorff* v. *Taylor*, 4 Pet. 349 ;

*Lawrence* v. *Sherman*, 2 McLean 488; *U. S.* v. *Bachelder*, 2 Gall. 15; *Vaccari* v. *Maxwell*, 3 Bl. C. C. 369; *Cabot* v. *Given*, 45 Me. 144.

In *Tucker* v. *Aiken*, 7 N. H. 113, Parker, J., declaring the general principle that the acts of an officer *de facto* are valid, so far as the public or the rights of third persons are concerned, and that the title of such an officer cannot be inquired into in any proceeding to which he is not a party, applied it to the case of a collector of taxes. See *Pierce* v. *Richardson*, 37 N. H. 307; and other cases in our own reports, collected in Morrison's Digest, page 499.

The rule is an exception to the requirement of the best evidence the nature of the case is susceptible of, adopted, for practical purposes, in the administration of justice. *Minor* v. *Tillotson*, 7 Pet. 100.

In practice, it is not likely to work any serious mischief, nor to be abused; since " a suit against a person claiming to act as a public officer, for any act affecting the person or property of another, will compel him to show himself legally entitled to act, or he must be held answerable for such acts, done under color of an office to which he had not a valid title." *Tucker* v. *Aiken*, before cited.

This objection is overruled.

The respondent also moved in arrest-of judgment for insufficiency in the allegations of the indictment, in this, that the indictment does not allege that the collector was " duly authorized," and in the discharge of his duty.

Indictments upon statutes need not recite the exact words of the statute. It is, as a general rule, sufficient to charge the respondent with acts coming fully within the statutory description, in the substantial words of the statute,—so many of the substantial words being employed as shall enable the court to see on what statute the indictment is framed. 1 Bish. Crim. Procedure, secs. 359 and 360.

A pretty close adherence to the terms of the statute seems to have been required in this State; and, although it has not been required that the exact language of the statute should be adopted, it is said that where the words of the statute are descriptive of the offence, the indictment must follow, substantially, at least, the language of the statute, and expressly charge the respondent with the commission of the offence, in the words of the statute, or their equivalents. *State* v. *Abbott*, 31 N. H. 434; *State* v. *Gove*, 34 N. H. 510; *State* v. *Rust*, 35 N. H. 438.

The statute provides that if any person shall wilfully obstruct or assault any officer or person, duly authorized, in the discharge of any duty of his office, &c., he shall be punished, &c. Gen. Stats., ch. 259, sec. 8.

The indictment charges that the respondent, with force and arms upon one Warren W. Holmes, then and there being *a collector of taxes* for said town of Jefferson, and in the due *discharge of the duties* of his said office, to wit, in the service of a certain warrant for the collection of taxes theretofore issued and directed to said Holmes by the selectmen of said Jefferson, then and there did make an *assault*, and him,

the said Holmes, so being in the *discharge of the duties* of his said office, then and there did *wilfully obstruct*, oppose, and hinder, and then and there did beat, &c.

This indictment expressly charges the respondent with the commission of an offence, in the equivalent words of the statute.

The requirement of the statute is, that the person assaulted must be " any officer, *or* person duly authorized." The indictment charges that Holmes was a collector of taxes for said town of Jefferson. A collector of taxes is an officer,—a town officer,—expressly designated as such by sec. 7, ch. 37, Gen. Stats., providing for the election of such an officer.

It is not alleged, in terms, that he was duly authorized ; but we have already decided that it is not essential to prove his commission or appointment,—proof that he has acted notoriously as a public officer being *prima facie* evidence of his official character.

The statute makes it an offence to assault or obstruct an officer, *or* person duly authorized ; and the indictment, adopting the alternative presented by the terms of the statutes, describes Holmes as an officer, without the superfluous allegation that he was also a " person duly authorized,"—following, precisely, the suggestion of GILCHRIST, J., in *State* v. *Copp*, 15 N. H. 212, p. 216.

The statute requires that the officer shall be " in the discharge of any duty of his office ; " and the indictment alleges that Holmes was " in the due discharge of the duties of his said office,"—which terms are certainly equivalent to those of the statute.

The statute requires that the obstruction *or* assault shall be *wilful.* The indictment charges that the respondent did *wilfully obstruct*, oppose, and hinder.

The indictment, in *State* v. *Beasom*, 40 N. H. 367, was founded upon ch. 217, sec. 5, Comp. Stats., in which the term " lawful process " is used with reference to the warrant or order, in the service of which it is contemplated the officer may be assaulted or obstructed.

And the court held that the indictment must show, with sufficient certainty, that the process was lawful, that being expressly made essential, by the statute, to constitute the offence ; that the indictment must state the process to be legal, or so describe it that it shall appear to be so.

The statute, upon which the indictment before us is founded, does not use the term " legal process," nor any equivalent of such term ; and, although a conviction could not be had, or sustained if procured, without proof of legal process, yet the language of the statute is not such as to require those terms to be used in the indictment.

In an indictment for resisting an officer, it must be distinctly charged that the person resisted was an officer, and was opposed while acting in such capacity, both of which facts must be proved at the trial. It is not necessary to set out in the indictment, *in hæc verba*, the process under which he was acting. *McQuoid* v. *The People*, 3 Gil. (Ill.) 76 ; *State* v. *Copp*, 15 N. H. 212.

In *Slicker* v. *The State*, 13 Ark. 397, it is said,—" It is not necessary to set out the process so as to show it to be valid, since, on the trial, the State could not introduce an invalid process in evidence; but it is sufficient so to describe the process as to identify it, and advise the defendant of what he is called on to answer."

In the present case, the indictment goes to that extent, and alleges, not only that Holmes was acting in the due discharge of the duties of his office, but specifies the particular duty and service he was performing, namely, the " service of a certain warrant for the collection of taxes theretofore issued and directed to said Holmes by the selectmen of said town of Jefferson."

For the purposes of this case, and as to this respondent, this allegation is abundantly sustained by proof, that he held for service, and was attempting to execute a warrant, not deficient in the general frame of it, and issuing in the ordinary manner from the selectmen.

Whether the proceedings, upon which the assessment of the tax was founded, were regular or otherwise; whether the tax was a legal tax or not; and whether the warrant was defective, in point of law, in some particulars of which the respondent in some form might take advantage, he will not be justified in resisting the officer, who is required by law, at his own peril, to pay obedience to the process. See Foster's Crown Law 311; 1 Hale P. C. 457; 1 Arch. Cr. P. L. 290; 1 East P. C. 310. This view receives confirmation from a provision of the statute that " no person, to whom any list of taxes shall be committed for collection, shall be liable to any suit by reason of any irregularity or illegality of the proceedings of the town or of the selectmen, nor for any cause whatever except his own official misconduct." Gen. Stats., ch. 54, sec. 16.

A reasonable protection should be afforded by the law to all such officers, whose duties are purely administrative. " Their duties, at best, are sufficiently embarrassing and responsible." *Webber* v. *Gay*, 24 Wend. 485; *Kelley* v. *Noyes*, 43 N. H. 210. Upon the whole, we are of opinion that the motion in arrest of judgment should not prevail.

But the respondent contends that he was justified in resisting the officer, upon the ground that, having exhibited to him sufficient property to satisfy the warrant, the officer was bound to take the property instead of arresting the body of the respondent.

Upon this point, we are entirely clear that the defence set up by the respondent's own testimony affords him no justification.

The statute authorizes the collector to arrest the body of the delinquent taxpayer " for want of goods or chattels whereon to make distress." Gen. Stats., ch. 54, sec. 8.

A fair construction of this statute does not require him to search for property, or to incur labor, expense, or risk in taking it. It only requires him to take such property as shall be specifically produced and tendered, together with indemnity, if required.

The policy of the law is to favor and aid, not to embarrass, its officers in the discharge of their responsible duties in the collection of the

revenues of the State, and statutes will be construed liberally for the sake of their protection.

Section 1 of chapter 54, General Statutes, provides that " every collector, in the collection of taxes committed to him to collect, and in the service of his warrant, shall have the powers vested in constables in the service of civil process."

This statute provision accords with the view of the collector's official powers and position taken by the court in *Kinsley* v. *Hall*, 9 N. H. 190, 194, where it is said,—" Writs of *mesne* process are substantially like the authority to collectors. The sheriff is required to attach the goods or estate of the debtor, and, for want thereof, to take his body. Yet, from the earliest times, it is believed to have been the received opinion that the sheriff has the. election to take the goods or the body in the first instance, and is not bound to search for goods at all. Indeed, if goods are attached on the original writ, it seems to have been understood that the creditor might, at his pleasure, abandon the attachment and levy upon the body. How it might be in such case, if property were actually tendered, with indemnity as to the ownership, need not now be considered. Nothing short of this can exonerate the debtor from arrest. The analogy from the case of a creditor or sheriff to that of the collector is very strong ; and we perceive no distinction between the two cases."

The respondent, however, contends that the collector had no right to arrest him, because he pointed out property in the barnyard, and told him to go and take what he pleased of it, at the same time refusing, at the officer's request, to turn any of the cattle out into the road.

The acts and declarations of the respondent amounted ' to no such production and tender of specific property as would impose upon the collector any obligation to take it ;—on the contrary, he declined to do any act whatever, by way of producing or tendering it.

He said—," There are the oxen, cows, steers, &c.—take what you will ; " but this declaration in no respect changed the position of the parties. It was but a statement of the collector's right, independent of it, to go into the barnyard and select property without the owner's permission.

Suppose the cattle had been in an open pasture : must the collector have incurred the trouble and annoyance of pursuing and securing them ? We think not, nor do we think he was required to take the possible risk of injury to himself or to any of the animals in the yard, in his efforts to select and separate certain of them from the rest.

It was the duty of· the respondent, at least upon request, to separate the animal or animals he designed to have taken from the drove, and produce and tender them, by themselves, to the collector ; and in default of his doing so, or tendering any other property, the collector had the right to arrest him.

With these views, our decision is that there must be

*Judgment on the verdict.*